IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLD REPUBLIC INSURANCE CO. | : | |
| | : | CV 02-5145 |
| v. | : | |
| | : | |
| LUMBERMENS MUTUAL CASUALTY COMPANY | : | |
| | : | |

**RESPONSE OF LUMBERMENS MUTUAL CASUALTY COMPANY TO
OLD REPUBLIC INSURANCE COMPANY'S ANSWER TO
THE CROSS-MOTION FOR SUMMARY JUDGMENT FROM
LUMBERMENS MUTUAL CASUALTY COMPANY**

Comes now Lumbermens Mutual Casualty Company, a defendant in the captioned matter and submits this response to Plaintiff Old Republic Insurance Company's Answer to the Cross-Motion for Summary Judgment of Lumbermens and would respectfully submit the following:

At issue in this case is the principal question of what policy or policies owe duties of defense and indemnification to Venator for the claims made against it as they are stated in the underlying Ricchiuti complaint.[1]  In order to decide this question it would appear that the court will be addressing the following questions:

1. What evidence should be considered in deciding the principal question?

2. Is there an issue concerning choice of law and if so which forum's law should be applied to the facts of the case?

3. Does the evidence in this case establish that the loading and/or unloading of the truck in which Ricchiuti alleges he was injured is a "use" of the truck?

4. If more than one insurance policy produces coverage, which policy is primary?

---

[1] The Ricchiuti case has been settled as of the submission of this pleading.

Lumbermens believes and contends that an analysis of the above questions will lead to the conclusion that the Old Republic business auto policy owes the primary duty to defend and indemnify Venator. This is because the Ricchiuti complaint alleges that Venator was negligent in loading a truck and that Ricchiuti was injured as a result of such negligent loading. The question of whether the negligent loading allegation constitutes a "use" of the truck would be dispositive as to which policy owes the primary duties of defense and indemnification.

There are a number of cases in the jurisdictions of Florida and New York which address the very narrow question of whether an allegation of negligence in the loading and/or unloading constitute a "use" of a truck. This question has arisen in cases where the coverage dispute is, as in the case at bar, between two insurance companies, one of which issued a business auto policy (Old Republic) and the other of which issued a commercial general liability policy (Lumbermens).

The relevant case law concerning the "use" question reveals that general principals have evolved as a result of courts grappling with the fact specific situations which have ultimately been the basis of decisions either finding that loading and/or unloading was, or was not, a "use." One court observed that it would be impossible or at least inconceivable that a truck could be "used" if it were not loaded or unloaded.

One principle that applies to the "use" cases, similar to the instant case, is that of "proximity". The closer in time and location the injury is to the act of loading or unloading, the more likely it is that the loading or unloading will be found by the courts to be a "use". The cases that have been identified by Old Republic and Lumbermens have a variety of fact situations, but it is clear that where, for instance, the injury occurs inside of the vehicle as a result of negligence in the loading or unloading, that a "use" will be found. Furthermore, the proximity

principle is satisfied when, as in this case, the allegation is negligence in loading at one site resulting in injury during unloading at a different site. Lumbermens contends that the facts of the instant case compel the conclusion that the injury was close enough in time and location to the loading of the truck to satisfy the proximity principle. Therefore, the allegation of negligent loading in the <u>Ricchiuti</u> complaint should constitute a "use," triggering the Old Republic business auto policy.

A second principle, which will be referred to as the "attenuator principle" has also come into play with the "use" cases. Courts will not find a "use" in such cases if the injury is too attenuated from the act of loading or unloading. One example of such a case was where a crane was being used to unload concrete from a truck. During this conduct an individual jumped onto the crane vehicle itself (outside of the truck being unloaded) and was injured. The court essentially found that the conduct of the injured individual broke the causal connection between the unloading and the injury. Accordingly, where the facts of a case contain "attenuators" (i.e. facts which distance the injury from the act of unloading or loading) courts will not find a "use" triggering coverage with a business auto policy such as issued by Old Republic.

Lumbermens contends that there were no "attenuators" present and therefore, the primary duty to defend and indemnify Venator is with the Old Republic under its business auto policy. One needs only to look at the allegations in the <u>Ricchiuti</u> complaint to reach this conclusion.

Lumbermens believes that it is the law of New York which should govern the interpretation of the insurance contracts in the case based on the "most significant relationship" test. However, even if Florida law is held to apply as plaintiff advocates, the same principles (proximity and attenuation) have been applied by that forum's courts in "use" cases. Therefore, Lumbermens contends that under New York or Florida law, the allegation of negligent loading

should constitute a "use" which makes the Old Republic business auto policy primarily as to defense and indemnity duties.

The above comments are a summary of Lumbermens' arguments based upon its understanding of the case law and facts applicable to this matter. What follows is a reply with authority to Old Republic's responsive memorandum concerning the pending motion for summary judgment. Lumbermens submits that the answers to the questions it initially identifies at the beginning of this pleading should be answered as follows:

1. The evidence to be considered includes only the insurance policies and the Ricchiuti complaint per the four corner rule.

2. To the extent that the court finds there is a conflict of law between Florida and New York concerning the "use" question, New York law governs by virtue of the "most significant contacts" analysis.

3. The relevant evidence (complaint and insurance policies only) establishes that the allegation of negligent loading constitutes a "use" triggering the Old Republic business auto policy with the primary duty to defend and indemnify Venator. (This is so even if Florida law is applied.)

4. By its own terms the Old Republic policy is primary as to the duty to defend and indemnify Venator.

Lumbermens submits the following authority and analysis in support of its argument:

**Four Corners Rule**

In its Reply and Response to Lumbermens' Cross-Motion for Summary Judgment, Old Republic admits that under Florida law, an insurer's obligation to defend a claim made against its insured must be determined solely from the allegations of the complaint. See, Old Republic's

4

Response, p. 7; see also, State Farm Fire and Casualty Co. v. Higgins, et al., 788 So.2d 992 (Fla. D.C.A. 4th 2001). Accordingly, pursuant to this rule, only the contents of the underlying Ricchiuti complaint and the insurance policies are admissible evidence. The deposition of William Ricchiuti is impermissible summary judgment evidence and cannot be used by Old Republic. Old Republic also seeks to introduce a letter written by Lumbermens requesting that Old Republic take over the defense of Venator in the Ricchiuti action. This letter is inappropriate summary judgment evidence and does not serve a legitimate purpose in this action. Old Republic admits in its reply that it does not seek to have the letter establish a fact in controversy and one wonders why it was attached as an exhibit.

The only relevant evidence is the underlying Ricchiuti complaint and the applicable insurance policies issued to Venator by the Old Republic and Lumbermens insurance companies. All other evidence Old Republic has submitted in support of its Motion for Summary Judgment is either outside of the four corners of the complaint or the insurance policies and thus, is inadmissible pursuant to law.

**Choice of Law**

This Court must apply the procedural law of the forum state. See, Klaxon Co. v. Stentor Electric Mfg. Co, 313 U.S. 487; 61 S. Ct. 1020; 85 L. Ed. 1477 (1941). The choice of which state's substantive law to apply is a procedural issue and therefore, must be governed by the procedural law of the forum. See, Id. Since issues arising under insurance policies are clearly issues of contract Pennsylvania courts must approach this conflict of law using a contract analysis. Nationwide Mutual Insurance Co. v. Walter, 290 Pa. Super. 129, 434 A.2d 164 (Pa. Super. 1981). The Commonwealth of Pennsylvania utilizes the "flexible contacts methodology" approach to insurance contract cases, which was set forth by the Pennsylvania Supreme Court in

Griffith v. United Airlines, 416 Pa. 1, 203 A.2d 796 (1964).  Pursuant to Griffith, supra, a court must **apply the law of the state having the most significant contacts or relationships with the contract** and not the underlying tort.  416 Pa. 1, 203 A.2d 796 (1964); see also, Nationwide Mutual Insurance Co. v. West, 2002 PA Super 282; 2002 Pa. Super. LEXIS 2597 (PA Super. 2002); Caputo v. Allstate Insurance Co. v. Walter, 290 Pa. Super. 129, 434 A.2d 164 (Pa. Super. 1985).  Therefore, pursuant to our state's Supreme Court ruling in Griffith, this court must apply law of state with greatest interest in outcome of litigation.

      The "flexible contacts methodology" approach to insurance contract cases in Griffith, supra, states that a court must apply the law of the state having the most significant contacts or relationships with the particular issue.  A mere counting of contacts is not what is involved, rather, the weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.  In re: Estate of Augustini, 311 Pa. Super. 233, 252, 457 A.2d 861, 871 (1983).

      In its reply and response to Lumbermens' cross-motion for summary judgment, Old Republic acknowledges the standard enunciated by the Pennsylvania Supreme Court in Griffith, but then cites an unpublished Southern District of New York opinion for the proposition that an insurance policy should be interpreted by the law of the state in which the policy was delivered.  This analysis of Pennsylvania law by a New York district court is not binding upon this Court.  Moreover, the fact that the opinion is unpublished and does not take into account the "flexible contacts methodology" in Griffith, supra, hardly makes the opinion persuasive.  The test for choice of law in Griffith is styled "flexible contacts methodology" and therefore, the forum of delivery is merely a factor in the "flexible" analysis.  Old Republic's improper assertion that the forum in which delivery of the policy was performed is the only meaningful contact, is

inaccurate when one considers the impact of the Pennsylvania Supreme Court's ruling in Griffith and the title of the "flexible" analysis.  Lumbermens relies in its argument in its memorandum or law previously filed that New York law should govern.

**"Use" of a Truck Includes the Act of "Loading and Unloading" Regardless of the Application of New York or Florida Law.**

With regard to the act of "unloading and loading" being implicit in the "use" of an automobile, the New York Court of Appeals in Cosmopolitan Mut. Ins Co. v. Baltimore & Ohio Rail Co., stated the following:

> The general provisions thereof for insurance against liability for accidents arising "out of the ownership, maintenance or use" of the truck are to be construed to afford coverage for liability for accidents occurring by reason of the use of such vehicle during the loading and unloading of goods therefrom.
>
> * * *
>
> Liability insurance coverage for use of a vehicle during loading and unloading embraces not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered.  Therefore, it is settled that where an accident results from an act inherent in or directly related to the process of the moving of the goods from the vehicle to the place to which they are to be delivered, then there is coverage.

Cosmopolitan, 18 A.D.2d at 462 (citations omitted).  Accordingly, it is well settled under New York law that even though an insurance policy, as in the present case, does not expressly define "use" as including "loading and unloading" it is clearly construed to afford coverage for liability for accidents occurring by reason of the use of such a vehicle during the loading and unloading of goods therefrom.  Therefore, Old Republic's contention that under New York law "loading and unloading" can only be construed as "use" of an automobile if expressly defined as such in

the policy, is a erroneous application of New York law and does not take into account the precedent set forth by New York state's highest court.

Florida courts reach the same conclusion. "'Use' of a vehicle includes its loading and unloading." Container Corp. of America v. McKenzie Tank Lines, 680 So.2d 509 (Fla. Dist. Ct. App. 1996). Moreover, the Florida Third District Court of Appeal in Pomerantz v. Nationwide Mut. Ins. Co. stated, "[t]rucks, by their inherent nature, are vehicles that must be loaded and unloaded in order to be used in their customary manner." 575 So.2d 1311, 1313 (Fla. Dist. Ct. App. 1991). It is inaccurate and imprecise for Old Republic to argue that Florida courts do not consider "loading and unloading" to be implicit in the "use" of an auto for the purposes of insurance when it is clear from the aforementioned cases that Florida courts hold that loading is a "use" of a vehicle.

Accordingly, regardless of whether this Court applies New York law or Florida law, both states recognize "loading and unloading" as a "use" of a vehicle for the purposes of coverage depending on the idiosyncratic facts of a case. Therefore, since it is well-settled in both states that "use" includes "loading and unloading," the next step of the coverage analysis must be to determine whether Venator's loading of the Ryder truck constituted a "use". Pursuant to the law of Florida and New York, the loading of the Ryder truck was causally connected to the injury sustained by Ricchiuti and thus, covered under the Old Republic auto policy.

**Venator was "using" the Ryder truck and was the cause of the injury to Ricchiuti.**

Upon review of the cases cited by Old Republic and Lumbermens in their respective motions for summary judgment, it is clear that the test for determining whether the loading of a vehicle constitutes a "use" is not a bright-line, but rather it is a "proximity" test. Two principles emerge upon analyzing the aforementioned cases: 1) Generally, loading or unloading of an auto

8

which results in bodily injury is a "use" of an auto and triggers a carrier's duty to defend and indemnify its insured; 2) Cases in which a court finds that the loading or loading does not constitute a "use" of an auto contain attenuated circumstances in which the loading or unloading of the auto is distanced from the resulting bodily injury as to make the act of loading or unloading significantly peripheral to the actual use of the auto.

With these principles in mind, it is clear that Venator "used" the Ryder truck and thus, liability coverage under the Old Republic auto policy is triggered. The act of loading the Ryder truck was alleged in the complaint to be causally related to the resulting injury to Ricchiuti. Specifically, the <u>Ricchiuti</u> Complaint alleges:

> 3. On or about April 17, 1997, Venator Group, Inc., was doing business on that date as Woolworth's, a retail store chain, and at all relevant times was a non-Pennsylvania corporation headquartered outside of Pennsylvania and doing business in the Eastern District of Pennsylvania.
>
> 4. On that date, the Plaintiff William Ricchiuti was employed by Ryder as a truck driver and while in Lancaster, Pennsylvania, was carefully **unloading freight in the cargo area of the truck when suddenly and without warning cargo fell and struck him in the back, causing severe injuries**.
>
> 5. The **cargo had been carelessly and negligently loaded** by the Defendant's agents, employees, workmen or servants, who also failed to warn Plaintiff William Ricchiuti about the dangerous condition that they had created even though they knew it would be unloaded by Plaintiff William Ricchiuti and owed him a duty of care.

(See, <u>Ricchiuti</u> Complaint, at pages, 2-3,)(emphasis supplied).

These allegations describe an injury in the cargo area of the truck caused by negligent loading. Moreover, there is no allegation of any event which would constitute a break in the casual connection or establish an "attenuator" between Venator's loading of goods into the Ryder truck and the loaded goods injuring Ricchiuti.

9

The following cases explain the aforementioned principles. As noted earlier, the "four corners rule" limits the evidence in an insurance coverage case concerning defense and indemnification duties to the allegations in the <u>Ricchiuti</u> complaint and the insurance policies. However, even if one considers the deposition of Mr. Ricchiuti, there is nothing there contrary to the allegations of negligence and injury as set forth in the complaint. Mr. Ricchiuti states he was hurt when stacked resin chairs fell on him when he was inside of the truck and begin to unload it. The allegation of negligent loading, pursuant to the principles of proximity and attenuation, is a "use."

In the Eastern District of New York case, <u>Crowley's Milk Co. v. American Mut. Liab. Ins. Co.</u>, the court found coverage for negligent loading of goods holding that "loading and unloading relate not to the immediate handling in and out of the truck but to the whole commercial delivery by consignor to carrier and by carrier to consignee." 313 F.Supp. 503, 504-505 (E.D.N.Y. 1969). This case is exactly like the case at bar. The facts of <u>Crowley's Milk</u> were as follows: a truck was loaded by the insured's employees with goods which had been sold to Walter Pape, Inc. <u>Id.</u> at 503. The doors of the truck were then closed, and the insured had no further sight of or control over the truck and its contents. <u>Id.</u> The truck was then driven to the Pape plant by persons who were not employees of the insured. <u>Id.</u> At the Pape plant, Pape employees unloaded the truck and during the unloading, a Pape employee was injured by the negligently loaded goods. <u>Id.</u> Accordingly, there was a causal relationship between the negligent loading and the resulting injury. This case exemplifies both of the aforementioned principles. Coverage was found in <u>Crowley's Milk</u> because there was a connection between the loading of the truck and the injury to the Pape employee. <u>Id.</u> at 504-505. Moreover, because the negligently loaded goods remained in the truck until arrival at the Pape plant and the loading of

the goods was the cause of the injury, there was no "attenuator" and thus, there was a direct connection between the insured's "use" of the vehicle and the injury. This case is a virtual replica or the fact pattern in the case at bar.

In Container Corp., supra, the Florida District Court of Appeals applied a causal connection analysis to determine whether the unloading of chemicals from a truck was related to the truck as to constitute "use." The facts of Container were as follows: Edwards, an employee of McKenzie was delivering caustic materials to the Container Corporation pursuant to a delivery agreement between Container and McKenzie which stipulated that McKenzie would secure liability and auto insurance, with Container listed as an additional insured. While attempting to retrieve equipment in the rear of the truck, Edwards slipped on curbing at the Container facility which resulted in Edwards being splashed with the caustic materials. Edward sued Container alleging negligence and strict liability. The issue for review before the court was whether the Edwards accident arose out of the "use" of the vehicle by Container and thus covered by the McKenzie auto policy. The court in Container held that the unloading of the chemicals from the truck constituted a covered "use". In support of its holding, the court stated:

> Edwards' accident thus arose out of the inherent nature of the truck--it had to be loaded and unloaded. The accident arose within the natural territorial limits of the truck, and the truck's actual use was not terminated--Edwards was removing equipment from the back of the truck when he was injured; Edwards reentered the truck and drove off, unaware of his injury. And a minimal causal connection exists between the use of the truck and Edwards' injury--the unloading process set in motion a chain of events ending in injury.

Container, 680 So.2d at 512. Accordingly, it appears that the Container court considered the same two principles listed above as dispositive: 1) Loading and unloading are part of the inherent nature of using a truck; 2) The causation between the unloading and the injury resulting from the spill of caustic chemicals was not interrupted by an intervening cause or "attenuator."

11

In <u>Utica Mut. Ins. Co. v. Prudential Prop. & Cas. Co.</u>, the New York Court of Appeals was asked to determine whether the negligent loading of goods onto a customer's auto by a store's employee was a "use" of that auto. The underlying liability case in <u>Utica</u>, involved a customer of the Conklin & Strong store who was injured while driving home because the paneling that she had just purchased was alleged to have been negligently loaded in her car by employees of Conklin & Strong. At the time of the accident, Conklin & Strong had a liability policy issued by Utica and the customer had an auto liability policy issued by Prudential. The Prudential policy, similar to the business auto policies involved in the present action, covered accidents resulting from the ownership, maintenance or use of a motor vehicle. Utica subsequently brought a declaratory judgment action to determine which policy covered the defense and indemnification of Conklin & Strong in the underlying action. The New York Court of Appeals affirmed the holding of the lower appellate court thereby declaring that the Prudential policy was obligated to defend and indemnify Conklin & Strong in the underlying action. The court stated that "loading and unloading coverage includes injuries resulting from the negligence of insured persons in the loading and unloading process and it is irrelevant that the harm is sustained at a different place and time then the loading or unloading. <u>Utica</u>, 103 A.d.2d at 62; <u>see</u>, <u>e.g.</u>, <u>Crowley's Milk Co. v. American Mut. Liab. Ins. Co.</u>, 426 F.2d 752 (2nd Cir. 1970), <u>Couch on Insurance</u>, 2nd ed., §45:137 – 45:138. The court reasoned that Conklin & Strong was an insured under the Prudential auto liability policy because the customer's vehicle was being "used" by Conklin & Strong when the Conklin & Strong employees "loaded" the paneling onto the customers car. Therefore, because there was no "attenuator" between the act of loading the panels and the resulting injury, and loading is a "use" of an auto, liability coverage was triggered.

An "attenuator" cut off the causation element between the use of a truck and the resulting injury in Rogers v. Continental Cas. Co., 155 So.2d 641 (Fla. Dist. Ct. App. 1963). The facts in Rogers are as follows: Florida Welding, insured under a Continental policy, supplied a crane, truck driver and crane operator to Jarco Company for the purposes of retrieving barges in a lake and placing them on trucks. The truck driver's responsibility was to drive the crane, a non-auto, to the jobsite, thereafter the crane operator would control the crane. After the operator of the crane finished unloading a barge onto a truck, he began swinging the crane towards the lake for another barge retrieval. At this point, Respress, the Florida Welding truck driver, "placed himself upon the ball weight at the end of the crane cable, in order to reach out to the next barge." Id. at 642. While the crane was moving with Respress hanging on the cable, it touched a high tension wire causing Respress to be electrocuted. Rogers, who was on the barge, attempted to rescue Respress and in the process was severely injured. In the underlying liability action, Rogers sued the operator of the crane for the injuries he sustained in his attempt to rescue Respress. The operator subsequently filed a declaratory judgment action and the issue before the court was whether the operator of the crane was "using" the crane pursuant to the Continental policy and therefore, entitled to coverage.

The court in Rogers reasoned that the loading of the truck was so far removed from the injury to Rogers that there could be no coverage because the injury did not stem from the "use" of the truck, rather the injury was caused by an attenuating circumstance. Id. at 643-44. The "attenuator" in Rogers was the act of Respress leaping on the moving crane and getting electrocuted by powerlines, thus, prompting Rogers' ill-fated rescue attempt. Rogers, therefore, was acting to rescue his electrocuted employee not loading or "using" the truck. Clearly, the "use" of the truck was peripheral to the injury in that the events unrelated to loading the truck

which transpired after the employee decided to jump on the crane's ball weight and the ill-fated rescue attempt constitutes the "attenuator."

Similarly in <u>General Acc. Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.</u>, 260 So.2d 249 (Fla. Ct. App. 1972), the Florida Court of Appeals found that a crane operator was not "using" a truck for the purposes of coverage because the resulting injury was too attenuated. In <u>General</u>, the underlying liability case arose from a construction of an addition to a building. Anderson, a building contractor and employer of McCarty, was hired to construct the shell of the addition. Rinker's duty was to deliver cement to the construction site and Heinicke, a crane contractor, was hired to supply a crane and a crane operator. On the date of the accident, Rinker's concrete truck arrived on the job site and Heinicke picked up the concrete with his crane. While Heinicke was maneuvering the bucket of his crane towards a tie-beam, the crane knocked McCarty off a wall and injured him. McCarty successfully sued Heinicke for his injuries. Thereafter, General Accident, Heinicke's liability carrier, brought a declaratory judgment action against Liberty Mutual, insurer of Rinker's concrete truck, alleging that Heinicke became an omnibus insured under the Rinker policy because he was using the truck at the time of the accident.

In denying coverage to Heinicke under Rinker's Liberty Mutual auto policy, the court in <u>General</u> reasoned:

> **The primary purpose of the Heinicke crane was to expedite the lifting of the delivered concrete to a point on the building where Anderson, in constructing the shell, would, in his discretion, use it.** This function was more directly related to the construction of the building than to the unloading of the truck. When the Rinker employee filled the grounded crane bucket with concrete from the truck, the delivery was complete as to that concrete in the bucket. Possession and control of the crane, the bucket and the concrete, was then exclusively in the Heinicke crane operator. Rinker could not and did not direct the movement of the concrete by the crane. Rinker could not and did not decide its destination

14

> or place of ultimate use. It cannot reasonably be said that the injury to McCarty arose out of the "use" of the Rinker truck. The "use" of the truck, within the purview of the Liberty policy, was neither an efficient and predominating cause or a substantial factor in the injury to McCarty.

General, 260 So.2d at 254 (emphasis supplied). The crane was under possession and control of the Heinicke operator and thus, Rinker, the owner of the truck, had no control over the actions of the crane. Rinker could not direct the crane, nor was the crane contractually obligated to the control of Rinker. Therefore the "attenuator" in General was not only the lack of control that Rinker had over the actions of the crane but also the fact that "delivery was complete" and that the cranes purpose at the time of the injury was in the construction of the building not in the act of unloading. Accordingly, the actions of the crane could not be related to the "use" of the Rinker truck as a cause of the injury.

**The Old Republic Auto Policy is Primary**

The Old Republic business auto policy states that it is primary over any other policy which may provide coverage. (See, Exhibit "A", page, OR0012). The facts of the present case, mandate primary coverage under the Old Republic auto policy because Venator was "using" the truck by loading it and there was no "attenuator" that severed the causation link between Venator's use of the truck and the injury. When Venator loaded the Ryder truck driven by Ricchiuti on April 17, 1997, possession and control of the transported goods, unlike the concrete in General, was in the control of Venator. Venator directed the movement of the goods by Ricchiuti. Venator decided the destination of its goods and the place of ultimate use. Moreover, there is nothing in the underlying Ricchiuti complaint to suggest that there was an intervening cause or "attenuator" as in the Rogers case. There are no facts plead which suggest that Ricchiuti's injury was not directly related to the negligent loading of the truck by Venator. The present case is similar to the aforementioned cases of Crowley's Milk, Container and Utica,

15

because the underlying liability complaint clearly states that the injury was caused by negligent loading and thus, "use" of the truck. Venator is listed as an additional insured[2] in a broadened endorsement. (See, Exhibit "A", page, OR0019). Accordingly, because there is direct causation between the "use" of the truck and the injury to Ricchiuti, primary coverage is triggered under the Old Republic auto policy.

---

[2] This sentence regarding the broadened endorsement is in response to footnote 8 in Old Republic's reply to Lumbermens' cross-motion for summary judgment. In footnote 8, Old Republic states that it was unable to locate an endorsement naming The Woolworth Corporation, The Venator Group, Inc., or Footlocker, Inc. as an additional insured under Old Republic's auto policy. There is a broadened endorsement attached to the Old Republic business auto policy located on bates numbered page OR0019 which states that an insured under the policy includes "any person organization for whom the Named Insured is obligated by written agreement to provide liability insurance." Therefore, because the Logistics Master Agreement, attached to Old Republic's motion for summary judgment as Exhibit "C", stated that Ryder would include Venator as an additional insured in its business auto liability policy, the broadened endorsement is triggered and Venator is specifically included as an additional insured.

More importantly, Old Republic has not contended that Venator does not qualify as an additional insured under the Old Republic auto policy. As stated in the above paragraph, Venator is an additional insured via the broadened endorsement. Independent to the endorsement, Venator is also an additional insured under the Old Republic policy because Ryder expressly permitted Venator to "use" the truck. Therefore, because Venator is an additional insured through both the endorsement and in the context of a permissive user, it is disingenuous of Old Republic to imply that Venator is not covered by the auto policy, especially when this issue was not raised in their declaratory judgment complaint nor their motion for summary judgment.

**Conclusion**

For the foregoing reasons Lumbermens respectfully requests this Honorable Court deny the Motion for Summary Judgment filed by Plaintiff, Old Republic Insurance Company, and grant Lumbermens' Cross Motion for Summary Judgment, such that Old Republic Insurance Company has the primary responsibility to defend and indemnify The Venator Group in the underlying liability action via its auto liability policy.

        Respectfully submitted,

        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN


By:_____
    WILLIAM K. CONKIN
    Identification No. 75881
    1845 Walnut Street, 18th Floor
    Philadelphia, PA 19103
    215-575-2761
    Attorney for Defendant and Counter Plaintiff
    Lumbermens Mutual Casualty Company

Date: _____

\01_18\LIAB\RAW\STAT\257193\RAW\11006\00137

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLD REPUBLIC INSURANCE CO. : | |
| : | CV 02-5145 |
| v. : | |
| : | |
| KEMPER CASUALTY COMPANY AND : | |
| KEMPER CASUALTY INSURANCE COMPANY : | |
| AND KEMPER INSURANCE COMPANIES : | |

### **CERTIFICATE OF SERVICE**

    I, William K. Conkin, Esquire hereby certify that a true and correct copy of Response of Lumbermens Mutual Casualty Company to Old Republic Insurance Company's Answer to The Cross-Motion for Summary Judgment from Lumbermens Mutual Casualty Company was served by U.S. Mail, First Class to:

> Edward L. McCandless, Esquire
> Chad Stollier, Esquire
> McCandless Law Associates, P.C.
> 1700 Sansom Street. 12th Floor
> Philadelphia, PA  19103-5215

        Respectfully submitted,

        MARSHALL, DENNEHEY, WARNER,
        COLEMAN & GOGGIN


BY: _____
      WILLIAM K. CONKIN, ESQUIRE
      Attorney for Defendants


Date:_____

Case 2:02-cv-05145-CMR    Document 23    Filed 02/03/2003    Page 19 of 19