UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OLD REPUBLIC INSURANCE COMPANY** : | No. 02-CV-5145 |
| : | (Consolidated) |
| : | |
| v. : | |
| : | |
| **LUMBERMENS MUTUAL CASUALTY COMPANY** : | |
| : | |
| **OLD REPUBLIC INSURANCE COMPANY** : | |
| : | |
| v. : | |
| : | |
| **THE VENATOR GROUP, INC. and FOOT LOCKER, INC.** : | |

**MEMORANDUM OPINION AND ORDER**

**Rufe, J.**                                                                                                          **March 9, 2004**

         Before the Court are the Cross-Motions for Summary Judgment of Plaintiff Old Republic Insurance Company ("Old Republic"), Defendant Lumbermens Mutual Casualty Co. ("Lumbermens"), and Defendant The Venator Group, Inc./Foot Locker, Inc. (collectively referred to as "Foot Locker").[1] Old Republic filed this declaratory judgment action to determine which party is responsible for costs associated with defending and indemnifying Foot Locker in Ricchiuti v. The Venator Group, Inc., No. 99-CV-1976, a personal injury action that settled in January of 2003.[2] The parties dispute whether the incident at issue is covered by Old Republic

---

[1] The Woolworth Corporation is the predecessor in interest to The Venator Group, Inc. Prior to the incident giving rise to this lawsuit, Woolworth changed its corporate name to Venator. Venator thereafter changed its name to Foot Locker. All three entities stand in the same position for purposes of this Memorandum Opinion.

[2] By Order dated December 17, 2002, the Court consolidated Old Republic Insurance Company v. The Venator Group, No. 03-CV-8706, a second declaratory judgment action filed by Old Republic, with Old Republic

Business Auto Policy No. Z35726-10 ("Old Republic Business Auto policy") or Lumbermens Commercial General Liability Policy No. 5AA 045 319-00 ("Lumbermens CGL policy"), or both. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

## FACTUAL BACKGROUND

On April 19, 1999, William and Irene Ricchiuti commenced action against Foot Locker in the United States District Court for the Eastern District of Pennsylvania, seeking to recover damages resulting from an April 17, 1997 accident in which William Ricchiuti was injured when cargo from the trailer of a truck fell upon him. Ricchiuti alleged that Foot Locker employees carelessly and negligently loaded the cargo.

Ricchiuti's employer, Ryder Logistics Integrated ("Ryder"), owned the truck and was required to transport goods from Woolworth's central distribution center to various Woolworth store locations pursuant to a Logistics Master Agreement, which provided that "[a]ll loads tendered to [Ryder] would be on 'shipper load and count' basis. Trailers to be sealed by Shipper." The Logistics Master Agreement further provided that Ryder drivers, such as Ricchiuti, were to assist in unloading at delivery locations.

The Logistics Master Agreement contained provisions addressing insurance requirements:

> B. <u>Insurance of Operations.</u> [Ryder] will obtain and maintain in effect throughout the Term the following insurance coverages:
>
> 1. Comprehensive general liability and automobile liability insurance for bodily injury (including death) and property damage, each in the minimum combined single limit per occurrence of $1,000,000.00 or such greater limit as the

---

<u>Insurance Company v. Lumbermens Mutual Casualty Company</u>, No. 02-CV-5145.

> U.S. DOT may require for transportation of any Product listed in the "Hazardous Products" table of the Schedule. The general liability coverage includes coverage for contractual liability. [Foot Locker] will be named an additional insured under this coverage.

Logistics Master Agreement at 4-5.

Foot Locker initially undertook the defense of the claim. In October of 2001, however, Foot Locker tendered the defense of the claim to Ryder and its insurer, Old Republic, under the Old Republic Business Auto policy.[3] By letter dated December 19, 2001, Ryder and Old Republic agreed to undertake defense of the action, subject to Old Republic's right to disclaim coverage for Foot Locker's alleged late reporting of the claim.

On November 19, 2002, Ryder, on behalf of Old Republic, sent a second letter to Foot Locker, purporting to reserve its rights based upon two additional provisions in the policy.[4] First, Old Republic asserted that because loading of the truck was complete when Ricchiuti was injured, the "Completed Operations" exclusion may be grounds for denying coverage. Second, Old Republic asserted that coverage may not apply because Ricchiuti's injuries did not occur during the course of Foot Locker's allegedly negligent "use" of the Ryder vehicle. The letter stated that Old Republic would continue to provide a defense, subject to its right to disclaim

---

[3] At the time of the incident, Ryder was covered by a Business Auto policy issued by Old Republic. Foot Locker was insured under two policies of insurance issued by Lumbermens: (1) the Lumbermens CGL policy and (2) a Lumbermens Business Auto policy. For purposes of the present motions, Old Republic asserts coverage under the Lumbermens CGL policy only.

[4] Foot Locker asserts that having controlled the defense for nearly one year, Old Republic is estopped from disclaiming coverage on these two additional grounds because the reservation of rights was not made in a timely manner. See Foot Locker's Answer to Old Republic's Mot. for Summ. J. at 3. Because of the Court's disposition of the case, it is unnecessary to address whether Old Republic's November 19, 2002 reservation of rights was timely or whether Foot Locker was unduly prejudiced by the one-year delay in raising these additional grounds for denying coverage.

coverage based on these grounds.

On January 6, 2003, the underlying <u>Ricchiuti</u> case settled for $125,000.00. While Old Republic funded the settlement, it did so without prejudice to its right to seek reimbursement from Lumbermens and/or Foot Locker for both the $125,000.00 settlement and costs of defense, which totaled $41,026.41. In the instant declaratory judgment action, Old Republic reasserts the defenses reserved in its November 19, 2002 letter. It maintains that because Foot Locker was not "using" the Ryder vehicle when the accident occurred, it is not obligated to provide coverage under the Old Republic Business Auto policy. Old Republic further submits that, even if Foot Locker was "using" the vehicle, defense and indemnity are barred by the "Completed Operations" exclusion. Old Republic therefore asserts that Lumbermens (or Foot Locker to the extent it is self-insured)[5] is responsible for the costs associated with the defense and indemnification of Foot Locker under the Lumbermens CGL policy.

Lumbermens and Foot Locker counter that coverage exists under the Old Republic Business Auto policy only. They argue that the "Completed Operations" exclusion in the Old Republic Business Auto policy is inapplicable because the operations were not completed. Lumbermens and Foot Locker further argue that there is no coverage under the Lumbermens CGL policy. Specifically, they assert that the "Aircraft, Auto or Watercraft" exclusion in the Lumbermens CGL policy bars coverage under that policy. Moreover, Lumbermens and Foot Locker contend that even if there were coverage under the Lumbermens CGL policy, Old Republic would be responsible for primary coverage by operation of the "Other

---

[5] Pursuant to a deductible or self-insured retention under the Lumbermens policy, Foot Locker is self-insured for the first $150,00.00. Thus, to the extent that there is primary or shared coverage under the Lumbermens policy, Foot Locker would be responsible for this sum.

Insurance" clauses in the respective policies.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party adequately supports its motion, the burden shifts to the non-moving party to go beyond the mere pleadings and present evidence that there is a genuine issue of material fact for trial. See id. at 324. Because the Court is confronted with cross-motions for summary judgment, the Court must consider each party's motion individually, and each party bears the burden of establishing a lack of genuine issues of material fact. Reinhert v. Giorgio Foods, Inc., 15 F. Supp. 2d 589, 593-94 (E.D. Pa. 1998).

The Declaratory Judgment Act, 28 U.S.C. § 2201, empowers federal courts to grant declaratory relief. State Auto Ins. Co. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000). A determination of coverage under an insurance policy is a question of law to be decided by the court. PECO Energy Co. v. Boden, 64 F.3d 852, 855 (3d Cir. 1995). In interpreting an insurance contract, the court must attempt to "ascertain the intent of the parties as manifested by the language of the written instrument." Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

## DISCUSSION

### A.  CHOICE OF LAW

The parties dispute whether Florida or New York law governs this case.  Old Republic argues that Florida law should govern in interpreting the Old Republic Business Auto policy and that New York law should govern interpreting the Lumbermens CGL policy.  Lumbermens and Foot Locker contend that New York law should apply to both policies.

It is well settled that the Court must apply the procedural law of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  The choice of which state's substantive law applies is a procedural issue and, therefore, is  governed by the procedural law of Pennsylvania, the forum state.  See id.  Under Pennsylvania choice-of-law principles, the state where the insurance policy was contracted, which is where it is delivered, governs interpretation of an insurance contract.  CAT Internet Servs., Inc. v. Internet Supply, Inc., 333 F.3d 138, 141 (3d Cir. 2002) ("Pennsylvania conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it is delivered."); Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742 (3d Cir. 1999) (same).[6]  Where proof as to place of delivery is lacking, it is presumed that delivery took place at the insured's residence.  See Carosella & Ferry, P.C. v. TIG Ins. Co., 189 F. Supp. 2d 249, 252 (E.D. Pa. 2001); Fed. Kemper Ins. Co. v. Ward, 679 F.

---

[6] Lumbermens and Foot Locker contend that New York law should apply in interpreting both policies because Foot Locker, a New York corporation, has "the most at stake in this case."  Old Republic argues for the application of Florida law with respect to the Old Republic policy and for New York law with respect to the Lumbermens policy.  The conflicts center around the interpretation of the phrase "use of a covered 'auto'" and the Completed Operations exclusion in the Old Republic Business Auto policy.
    The Court agrees with Old Republic that it should apply Florida law in interpreting the terms of the Old Republic Business Auto policy.  Although the Pennsylvania Supreme Court has adopted the "most significant contacts" test for choice of law analyses, see Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964), the traditional delivery rule persists in cases involving insurance contracts.  See Philadelphia Facilities Management Corp. v. St. Paul Fire & Marine Ins. Co., 379 F. Supp. 780, 783 (E.D. Pa. 1974).

Supp. 489, 491 (E.D. Pa.), aff'd 860 F.2d 1074 (3d Cir. 1988).

Ryder is a Florida corporation with its principal place in Miami, Florida. Because Old Republic delivered the Old Republic Business Auto policy to Ryder, the named insured, in Florida, the law of Florida governs the Old Republic Business Auto policy. On the other hand, Foot Locker is a New York corporation with its principal place of business in New York, New York, and its Lumbermens CGL policy was presumably delivered in New York. Accordingly, the Court will apply New York law in interpreting the Lumbermens CGL policy insofar as a choice of law conflict arises with respect to that policy.

### B. COVERAGE UNDER THE OLD REPUBLIC BUSINESS AUTO POLICY

On April 17, 1997, Ryder was insured under the Old Republic Business Auto policy, which provides coverage as follows:

> SECTION II - LIABILITY COVERAGE
>
> A. COVERAGE
>
> We will pay all sums an "insured" legally must pay as damages because of bodily injury or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The term *insured* is defined in the policy as follows:

> 1. WHO IS AN INSURED
>
>    The following are insured:
>
>    a. You for any covered "auto."
>    b. Anyone else while using within your permission a covered "auto" you own, hire, or borrow. . . .

By endorsement, effective October 1, 1990, the definition of *insured* was

modified to provide as follows:

> 1. It is agreed Who Is An Insured is amended to include the following:
>
>> d. Any person or organization for whom the Named Insured is obligated by written agreement to provide liability insurance but in no event for more or broader insurance than such agreement requires, and only if such insurance is afforded under the policy without reference to such agreement.

As noted above, Old Republic asserts that there is no coverage under the Old Republic Business Auto policy because Foot Locker was not using the Ryder vehicle at the time of the accident. Rather, it contends the Ryder truck was merely the situs of the accident. It therefore contends that Foot Locker cannot be a permissive user of the Ryder vehicle. Accordingly, the Court must determine whether Foot Locker was "using" the Ryder vehicle when Ricchiuti was injured.

### 1. "Use" of an Automobile

An insurance contract is to be construed in accordance with the plain language of the policy. Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732 (Fla. 2002). Under Florida law, interpretation of an insurance contract, including determination and resolution of ambiguity, is a matter of law. Jones v. Utica Mut. Ins. Co., 463 So. 2d 1153 (Fla. 1995). The insurance contract must be viewed "in its entirety with a view toward giving every provision meaning." Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1382 (11th Cir. 1993) (citation omitted).

At the time of the accident, Ricchiuti was at the Park City Mall in Lancaster, Pennsylvania. Ricchiuti had just hauled a trailer from Denver, Pennsylvania, where Foot Locker

employees had loaded the trailer with chairs. Upon arriving at his destination in Lancaster, Ricchiuti began to unload the chairs but was injured when the stacked chairs, loaded by Foot Locker at the Denver location, fell on him.

Florida courts apply a three-prong test to determine whether a particular event arises from the "use" of an automobile:

> (1) The accident must have arisen out of the inherent nature of the automobile;
> (2) The accident must have occurred within the territorial limits of the automobile and the actual use, loading or unloading must not have terminated; and
> (3) The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.

Race v. Nationwide Mut. Fire Ins. Co., 542 So. 2d 347, 349 (Fla. 1989) (quoting 6 B J. Appelman, Insurance Law and Practice, § 4317 (Buckley ed. 1979)).

Applying the Race factors to the case at bar, this Court concludes that Foot Locker was using the Ryder truck when Ricchiuti was injured, so coverage is due under the Old Republic Business Auto policy. First, the accident arose out of the inherent nature of a truck, an automobile that is customarily used for loading, unloading and transporting. See Pomerantz v. Nationwide Mut. Fire Ins. Co., 575 So. 2d 1311, 1313 (Fla. App. 1991) (finding coverage where person had been injured by a worker loading cut trees into his uninsured truck because "trucks, by their inherent nature, are vehicles that must be loaded and unloaded in order to be used in their customary manner"). Second, the injury was not caused by a separate or intervening act unrelated to the vehicle, and loading and unloading are essential to the use of a cargo transport truck. See Gov't Employees Ins. Co. v. Batchelder, 421 So. 2d 59, 61 (Fla. App. 1982)

("inherent use of an automobile includes its use to transport or store items, either commercial or personal in nature").  Finally, there was a causal relationship between the insured truck and the accident.  There were no attenuated circumstances in which the loading or unloading of the truck was distanced from the resulting bodily injury as to make the unloading significantly peripheral to the actual use of the truck.  See id; see also Quarles v. State Farm Mut. Auto. Ins. Co., 533 So. 2d 809, 812 (Fla. App. 1989) (finding sufficient causal relationship where removing firearm from gun rack installed in pickup truck caused injury).

In arguing against coverage, Old Republic relies heavily upon Florida Crushed Stone v. Commercial Standard Insurance Company, 432 So. 2d 690 (Fla. App. 1983), which held that once the loading of the vehicle is completed, and the vehicle is in motion, a third party can no longer be an additional insured due to his permissive use of the vehicle during the loading process.  Id. at 691.  The Court finds that case to be distinguishable because, unlike the loader in Florida Crushed Stone, Foot Locker was an additional insured, not only by virtue of its permissive use of the Ryder vehicle when it loaded the truck, but also through express language in the endorsement that extended the definition of an insured to include "any person or organization for whom the insured is obligated to provide liability insurance. . . ."  Because Foot Locker was an additional insured, the Court finds that Old Republic intended to insure and protect against claims for improper loading.  Foot Locker directed the movement of the cargo, deciding both the destination and the place of ultimate use of the goods.  Thus, there is liability coverage under the Old Republic Business Auto policy even though Foot Locker did not have exclusive physical control of the truck at the time of the injury-causing event.

### 2. "Completed Operations" Exclusion

Old Republic asserts that, even if the Court concludes that Foot Locker was using the vehicle at the time of the accident, the "Completed Operations" exclusion bars coverage since the trailer was loaded in Denver, Pennsylvania, and the alleged accident occurred in Lancaster, Pennsylvania.

The Old Republic Business Auto policy contains the following exclusion for completed operations:

> SECTION II - LIABILITY COVERAGE
>
> B.  Exclusions
>
>> 10.  Completed Operations
>>
>> "Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned. In this exclusion, your work means:
>>
>>> a. Work or operations performed by you or on your behalf. . . .
>>>
>>> Your work will be deemed completed at the earliest of the following times:
>>>
>>>> (1) When all of the work called for in your contract has been completed.
>>>> (2) When all your work to be done at the site has been completed if your contract calls for work at more than one site.
>>>> (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Old Republic argues that the exclusion applies because the spotting, loading and

pick-up at one site had been completed, and Ricchiuti was in the process of unloading at a different location at the time of the accident. Old Republic asserts that any negligence by Foot Locker employees occurred in the course of operations that were completed in Denver, Pennsylvania and therefore its work was completed. Resolution of this issue hinges on the meaning of the word "your" in the "Completed Operations" exclusion.

Under the "Completed Operations" exclusion in the Old Republic policy, coverage is excluded for bodily injury "arising out of *your work* after that work has been completed" and "when all *your work* at the site has been completed" (emphasis added). The first page of the Old Republic Business Auto policy states that "[t]hroughout the policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." The declaration pages clearly provide that the Named Insured is "Ryder System, Inc. and its Associated, Affiliated or Subsidiary Companies as Have Been, are Now, or may Hereafter be Constituted." Because Ryder is the only named insured, reading *you* and *your* to include Foot Locker would make surplusage of the phrase "Named Insured shown in the Declarations." Clearly, all of Ryder's work at the Lancaster site had not been completed.[7] Accordingly, based upon the facts in the case at bar and the clear language in the policy itself, the Court concludes that the "Completed Operations" exclusion is not triggered.

Although the Court finds the use of the word to be quite clear, even if the word *your* were ambiguous, the "Completed Operations" exclusion would not apply. Under Florida law, interpretation of an insurance contract, including the determination of and resolution of an

---

[7] It should be noted that if the accident had occurred after Ricchiuti unloaded the chairs and placed them at their final destination at the Lancaster site, the Court would have been presented with a different factual scenario under which the exclusion might apply.

ambiguity, is a matter of law. See Dahl-Eimers, 986 F.2d at 1381. Ambiguity exists if language "is susceptible to two or more reasonable interpretations that can fairly be made." Id. Exclusionary provisions that are ambiguous or otherwise susceptible to dual meaning must be construed in favor of the insured, since the insurer drafts the policy. Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla. 1993). Because "arising out of your work" is a clause that limits coverage, it must be construed most stringently against the insurer. Accordingly, insofar as there is ambiguity the Court rules that the words "your work" means Ryder's work and not the work of additional insureds such as Foot Locker.

### C. PRIMARY COVERAGE

Alternatively, Old Republic argues that there may be dual coverage under both the Lumbermens CGL policy and the Old Republic Business Auto policy. The Court disagrees. Although the Lumbermens CGL policy provides liability coverage for Foot Locker's business operations, it also contains an exclusion for damages arising out of the use of any "auto":

> Coverage A: Bodily Injury and Property Damage Liability
>
> Exclusion g- Aircraft, Auto or Watercraft:
>
>> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to an insured. Use includes operation and "loading or unloading."

The policy defines "auto" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."

While Lumbermens presents a compelling argument that coverage is excluded under Exclusion g, it is unnecessary for the Court to reach this issue. Even if the Court were to

accept Old Republic's argument for dual coverage--notwithstanding the "auto" exclusion in the Lumbermens CGL policy that would appear to make coverage under these two policies mutually exclusive--the "Other Insurance" provisions in the policies would render the Lumbermens CGL coverage excess. In other words, the coverage afforded to Foot Locker under the Old Republic Business Auto policy is primary to any insurance which may be available to Foot Locker under the Lumbermens CGL policy.

Old Republic's "Other Insurance" clause states that it is primary insurance for any covered vehicle:

> OTHER INSURANCE
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage is excess over any other collectible insurance.

Conversely, the "Other Insurance" clause in the Lumbermens policy provides:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> The insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with that other insurance by the method described in c. below.
>
> **b. Excess Insurance**
> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

* * * * * *

> 3) If the loss arises out of maintenance of the use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I)

> When this insurance is excess, we will have no duty under Coverage A or B to defend any "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

The "Other Insurance" clauses at issue here do not conflict with each other. Because Foot Locker did not own the Ryder truck, its Lumbermens-issued CGL policy, at most, would apply excess coverage. See Jefferson Ins. Co. of New York v. Travelers Indem. Co., 703 N.E.2d 1221, 1126 (N.Y. 1998). Thus, consistent with the terms of both policies, only Old Republic's Business Auto Policy provides primary coverage under these circumstances.

## CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Defendants Lumbermens Mutual Casualty Company and The Venator Group/Foot Locker, Inc. and against Plaintiff Old Republic Insurance Company.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OLD REPUBLIC INSURANCE COMPANY** | : No. 02-CV-5145 |
| | : **(Consolidated)** |
| v. | : |
| **LUMBERMENS MUTUAL CASUALTY COMPANY** | : |
| | |
| **OLD REPUBLIC INSURANCE COMPANY** | : |
| v. | : |
| **THE VENATOR GROUP, INC. and FOOT LOCKER, INC.** | : |

**O R D E R**

AND NOW, this 9th day of March, 2004, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED and DECREED as follows:

(1) The Motion for Summary Judgment of Old Republic Insurance Company [Doc. No. 35] is DENIED.

(2) The Cross-Motion for Summary Judgment of Defendant Lumbermens Mutual Casualty Company [Doc. No. 36] is GRANTED.

(3) The Cross-Motion for Summary Judgment of Defendants Venator Group, Inc. and Foot Locker, Inc. [Doc. No. 38] is GRANTED.

(4) The Court hereby declares that Old Republic Insurance Company had the primary duty to defend and indemnify The Venator Group, Inc. and/or Foot Locker, Inc. in Ricchiuti v. The Venator Group, Inc., No. 99-CV-1976.  It is further declared that Old Republic Insurance Company is not entitled to recover from Lumbermens Mutual Casualty Company, The Venator Group, Inc. and/or Foot Locker, Inc. any sums it paid in settlement of the Ricchiuti litigation nor is Old Republic Insurance Company entitled to recover any costs associated with defending The Venator Group, Inc. and/or Foot Locker, Inc. in said action.

(5) The Clerk is directed to enter judgment in favor of Lumbermens Mutual Casualty Company, The Venator Group, Inc. and Foot Locker, Inc. and against Old Republic Insurance Company.

(6) The Clerk is directed to CLOSE this case for statistical purposes.

                                                  **BY THE COURT:**

                                                  _____

                                                  **CYNTHIA M. RUFE,  J.**